IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWO SNAPCHAT ACCOUNTS THAT ARE STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No. 3:24MJ76 (TOF) <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tae H. Kim, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2020. Prior to working for the FBI, I was employed by the Gwinnett County Police Department from November 2014 to February 2020. At the police department, I took on duties as a patrol officer as well as an investigator with the Detective Bureau. I am presently assigned to the FBI's Violent Crimes Division in New Haven. The FBI is the lead agency in that Task Force, which comprises federal, state, and local law enforcement personnel, and which is tasked with investigation of violent crime and violent crimes against children within the state of Connecticut. As such, my duties include, among other things, including child sexual exploitation, Internet crimes against children, and human trafficking. As part of my duties, I investigate violations of federal law, including the online exploitation of children, particularly in relation to violations of Title 18, United States Code, Sections 2251, 2252 and 2252A which criminalize, among other things, the production, advertisement, possession, receipt, accessing with intent to view and transportation of child pornography. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

1

2.     I make this affidavit in support of an application for a search warrant for

information associated with the following Snap, Inc. accounts:

  a.  user name: **s_blocking2256**,

      display name: **Sillyness**  ("SNAP ACCOUNT 1")[1]

  b.  user name: **deezy123455**

      display name: **Deezy**  (SNAP ACCOUNT 2")

(collectively, "THE SNAP ACCOUNTS") that are stored at Snap, Inc. ("Snapchat"), a company

located at 2772 Donald Douglas Loop, North Santa Monica, California 90405.  This affidavit is

made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A) to require Snapchat to disclose to the government copies of the

information (including the content of communications) further described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

3.     Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that the SNAP ACCOUNTS were used to commit violations of

18 U.S.C. § 1470 (Transfer of obscene material to minors); 18 U.S.C. § 2252A(a)(2)(A) and

(b)(1) (receipt or distribution of child pornography); 18 U.S.C. § 2252A(a)(5)(B) and (b)(2)

(possession of and access with intent to view child pornography); 18 U.S.C. §2422(b)

(enticement of a minor); and 18 U.S.C. § 2251(a) (production of child pornography)

(collectively, the "TARGET OFFENSES").

---

[1]  SNAP ACCOUNT 1 was preserved on June 22, 2023 and again on September 19, 2023.

4.     There is also probable cause to search the locations described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

5.     As discussed more fully below, I believe the user of the SNAP is Daryl Todd, an adult male (YOB 1980) who resides in Vernon, Connecticut.

## JURISDICTION

6.     This Court has jurisdiction because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## STATUTORY AUTHORITY

7.     As noted above, this investigation concerns alleged violations of the following:

    a.  18 U.S.C. § 1470 makes it a crime for whoever, using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so.

    b.  18 U.S.C. § 2252A(a)(1) and (b)(1) prohibit a person from knowingly mailing or transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), and attempting or conspiring to do so.

    c.  18 U.S.C. § 2252A(a)(2) prohibits knowingly receiving or distributing any child pornography that has been mailed or using any means or facility of interstate or

3

foreign commerce shipped or transported in interstate or foreign commerce by any means, including by computer and attempting or conspiring to do so.

d. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing, or accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce, or in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer and attempting or conspiring to do so.

e. 18 U.S.C. § 2422(b) prohibits, "…using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so…."

f. 18 U.S.C. §§ 2251(a) makes it a crime for any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate of foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct

## **DEFINITIONS**

8.       The following definitions apply to this Affidavit and Attachment B:

a.  "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.  "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.  An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. IP

addresses can be "dynamic," meaning that the ISP assigns a different unique

number to a computer or device every time it accesses the Internet. IP addresses

might also be "static," if an ISP assigns a user's computer a particular IP address

that is used each time the computer accesses the Internet. ISPs typically maintain

logs of the subscribers to whom IP addresses are assigned on particular dates and

times.

d.   "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of

eighteen years.

e.   "Mobile application" or "chat application," as used herein, are small, specialized

programs downloaded onto mobile devices, computers and other digital devices

that enable users to perform a variety of functions, including engaging in online

chat and sending or receiving images and videos.

f.   "Records," "documents," and "materials," as used herein, include all information

recorded in any form, visual or aural, and by any means, whether in handmade,

photographic, mechanical, electrical, electronic, or magnetic form.

g.    "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or

simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-

genital, or oral-anal, whether between persons of the same or opposite sex; (b)

bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious

exhibition of the anus, genitals, or pubic area of any person.

**PROBABLE CAUSE**

9.      On or about May 20, 2023, the mother of Minor Victim 1 ("MV1")[2] (YOB 2009),

contacted the local police department in her hometown in New York.  MV1's Mother reported

that her daughter sent explicit images on Snapchat to the SNAP ACCOUNT 1.  MV1's Mother

advised that she reviewed MV1's phone and saw SNAP ACCOUNT 1 in MV1's "pending

approval" list on Snapchat.[3]

10.      MV1's Mother explained that she clicked SNAP ACCOUNT 1's username and

saw (1) photos and videos sent by MV1 and three of MV1's minor friends (whose names and

identities were provided by MV1's mother), including images focused on the genitalia of the

minor(s); (2)  videos sent by the user of SNAP ACCOUNT 1 to MV1, including a video that

purportedly depicted himself sucking his own penis; and (3) MV1's Mother reported that the

user of SNAP ACCOUNT 1 requested videos in return, including: "Sillyness, show me your

faelixiblity trait."

11.      MV1's Mother reported that MV1 told her that she met the user of SNAP

ACCOUNT 1 on Snapchat in or around January 2023.  Further MV1 stated that she sent him

videos and pictures of herself for money and that she received a total of $80 since February 2023

for images and videos of her chest and vagina.  MV1's Mother advised that MV1 received the

payment through Cash App and that she believed the user of the SNAP ACCOUNT 1 used three

---

[2] The identities of MV1, MV2 and MV3 are known to the Affiant but are not included in this
affidavit to protect the identity of the minors.

[3] Based on my training and experience, I believe that "pending approval" can happen in a variety
of ways on the Snapchat platform, including if the user has (1) not approved a friend request; (2)
unfriended someone who was previously a friend; or (3) blocked the account.

different user names to send money on Cash App to MV1 and the other minors but the only one

MV1 could remember was the "DARYL TODD" "$Senditforhahas".

12.     MV1 told her mother that she believed the user of SNAP ACCOUNT 1 resided

in Massachusetts, but that she believed that the user told the other girls that he lived in

Connecticut. [4]

13.     MV1's mother recorded the Snapchat communications that she observed on

MV1's phone with SNAP ACCOUNT 1.  Your affiant reviewed this recording and observed

several videos, including one which depicts MV1 pulling down her shirt to expose her bare

breasts and another video showing MV1 pulling her underwear aside to expose her bare vagina.

14.     In June of 2023, Officers from the ███████ Police Department (State of New

York) conducted an interview with MV1. The interview included the following information:

    a.  Sometime around February 2023, MV1 was at a sleepover at another minor
        victim's house ("MV2") (YOB 2009). During the sleepover, MV2 told MV1 that
        she had known this person for about a week or so and that they had met on
        Snapchat. MV2 stated that the person was a weird old person who would give her
        money in exchange for naked pictures. During the sleepover, SNAP ACCOUNT
        1 added MV1's Snapchat account. The user of SNAP ACCOUNT 1 told MV1
        that he had seen a picture of her from MV2's photograph where MV2 had tagged
        MV1's Snapchat account.
    b.  The user of the SNAP ACCOUNT 1 sent a video stating that he would give MV1
        money for naked pictures. MV1 and MV2 sent videos and photographs of
        themselves naked to SNAP ACCOUNT 1.  MV1 then received $50 in her
        CashApp account and MV2 received $20 in her CashApp account.  The money

---

[4] After taking possession of MV1's phone, MV1's mother attempted to identify the user of the
SNAP ACCOUNT 1 by reviewing the images and videos on MV1's Snapchat account; by sending
messages with MV1's account to SNAP ACCOUNT 1; and asking adult friends to add SNAP
ACCOUNT 1 on Snapchat.  While monitoring MV1's snapchat account, MV1's Mother observed
SNAP ACCOUNT 1 send a video and multiple messages requesting nude photographs or videos
from MV1.  MV1's Mother pretended to be MV1 and got the user to send $10 on Cash App $10
to her personal account.  The payment came from a Cash App account with the username:
$Sillyness123__Deezzyyyy".  In addition, MV1's Mother attempted to identify the user of the
SNAP ACCOUNT 1 by reviewing pictures on the sex offender registries in Connecticut and
Massachusetts.  Initially, MV1's Mother identified an individual in Massachusetts. That individual
was subsequently ruled out.  As discussed below, I believe the user is Daryl TODD (who is not on
the sex offender registry).

was sent from a Cash App Account with the Username: $Senditforhahas and the display name "Daryl Todd.".

   c. Over the next several months, the user of the SNAP ACCOUNT 1 asked MV1 for naked photographs on different occasions and he would send money through CashApp using : $Senditforhahas and the display name "Daryl Todd".

   d. In or around April of 2023, MV1 told the user of the SNAP ACCOUNT 1 that she was 13 years old, but he continued to request  more naked pictures and videos.

   e. In or around May of 2023, MV1 and her friend MV3 (YOB 2009) were communicating on Snapchat with SNAP ACCOUNT 1.  The user of the account asked both MV1 and MV3 to send him a video of themselves naked and touching each other. MV1 and MV3 sent a video of themselves touching each other's bare breasts with their hands and mouths to SNAP ACCOUNT 1.  Thereafter, MV1 received $30 in her CashApp account from : $Senditforhahas and the display name Daryl Todd.

15.    Throughout the relevant time period, MV1 estimates sending "well over" 12 naked videos and photographs to SNAP ACCOUNT 1

## SNAP ACCOUNTS

16.    The following information about SNAP ACCOUNT 1 was obtained from SNAP, INC:

- Created on:      June 16, 2022

- Display name: Sillyness

- Email address:  toddaryl08@gmail.com (verified)

- Phone number XXX-XXX-0810 (verified)

- As of January 8, 2024, the SnapChat App  associated with SNAP ACCOUNT 1 was last recorded opening on December 19, 2023 (although the password for the application was changed on December 20, 2023).

- The user of SNAP ACCOUNT 1 enabled "Ghost Mode" which prevents friends from seeing the location of the user.

9

17.     The following information about SNAP ACCOUNT 2 was obtained from SNAP, INC:

- Created on:     December 21, 2023

- Display name:  Deezy

- Email address:  todddaryl1767@gmail.com (verified)

- Phone number XXX-XXX-0810 (verification pending) [5]

- Subscriber count:  74

- As of January 18, 2024, the Snapchat app associated with SNAP ACCOUNT 2 was last recorded opening on January 17, 2024.

18.     The creation IP address for SNAP ACCOUNT 2 is 98.216.130.114.  That same IP address is associated with SNAP ACCOUNT 1 in that it appears more than 40 times in the IP addresses associated with login and logout and more than 100 times in the IP address captured from "friend events".

19.     Cash App provided the following information to the FBI regarding the user information for account $Senditforhahas.

- Identity Verification Name: Daryl Todd

- Alias:  $Senditforhahas

- Date of Birth:  XX/XX/1980

- Phone number XXX-XXX-0810 [6]

- Last four SSN:  4480

---

[5] Certain information in this affidavit is replaced  "XX" redacted information known to your affiant but not included here to protect the disclosure of personally identifiable information.

[6] This is the same number associated with SNAP ACCOUNT 1 and SNAP ACCOUNT 2.

- Address:  XX Road, Apartment XX, Vernon, Connecticut

- On or about May 17, 2023, the $Senditforhahas Cash App Account status was changed to "blacklisted" although the IP data indicates that the user continued to attempt to engage with the App through at least September 8, 2023.

20.     Cash App provided the following information to the FBI regarding the user information for account with the display name "Deezzyyyy" and "Daryl Todd".

- There is no identity verification name, date of birth, social security number or address listed for this account.

- Alias:  silliness123 and daryltodd5337@gmail.com

- This account was opened on May 17, 2023 (the same day the $Senditforhahas Cash App Account was blacklisted).  This account was active at least until July 26, 2023.

21.     In addition, the same IP address identified in Paragraph 18 above is associated with more than 40 connections with the $Senditforhahas Cash App Account (such as fund transfers, payment initiation and, device verification- and 100 connections with the Deezzyyyy Cash App Account.

22.     Both of the Cash App accounts discussed in Paragraphs 19 and 20 above shared the same payment source history, including the same 16-digit card, bank name and zip code (06066 – which is associated with Tolland County, Connecticut).

23.     Through the Connecticut Department of Motor Vehicles, your affiant confirmed that Daryl Todd's listed home address, birthdate, and last four numbers of his social security number are consistent with the Cash App information for $Senditforhahas Cash App Account

24.     Furthermore, CashApp's revealed the following financial transactions paid from the $Senditforhahas Cash App Account:

- April 29, 2023 $5 paid to a Cash App account associated with MV1.  The subject line was "S_blocking2256 snap"

- April 29, 2023 Three (3) payments were made to a Cash App account associated with MV2. The first payment of $5 had the subject line "S_blocking2256 snap". The second payment of $10 had "come onnnn" .The third payment of $50 had no information in the subject line.

- May 02, 2023, "Daryl Todd" paid $5 to a Cash App account associated with MV1..  The subject line was "S_blocking2256 snap"

- May 13, 2023  "Daryl Todd" paid $30 to a Cash App account associated with MV1..  The subject line was "S_blocking2256 sc"

**BACKGROUND INFORMATION CONCERNING SNAP, INC.**

25.     Based on my training and experience, Snapchat is a mobile application made by Snap Inc., and is available through the Apple iPhone "app store" and Google Play. The application provides users a way to share photos, videos, and text. Subscribers obtain an account by downloading the free Snapchat application to their mobile media device and registering an account with Snapchat. During the registration process, Snapchat asks subscribers to provide basic personal information. Therefore, the computers of Snap Inc., are likely to contain stored electronic communications and information concerning subscribers and their use of Snapchat services, such as account access information, account application information and content such as saved photos, videos, and text/chat messages.

26.     Snapchat users can take photos or videos ("Snaps") using their camera phone in real-time and then select which of their friends to send the message to. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it is opened in the case of the recipient). Users are able to save a photo or video they have taken locally to their device or to "Memories" (explained in more detail below in paragraph 9), which is Snapchat's cloud-storage service.

27.     Snapchat users can add a photo or video Snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to their Story can be viewed by either all Snapchat users or just the user's friends for up to 24 hours. Stories can also be saved in Memories until deleted by the user.

28.      "Memories," Snapchat's cloud-storage service, is where users can save their sent or unsent Snaps, posted stories, photos and videos from their phone's photo gallery. A user can also edit or send Snaps and create stories from these Memories. Snaps, stories, photos and videos saved in Memories are backed up by Snap Inc. and may remain in Memories until deleted by user.

29.     Another feature available to Snapchat users is the chat feature. A user can type messages, send photos, videos, audio notes and video notes to friends within the Snapchat application. A user sends a chat message to a friend and once it is viewed by both the sender and the recipient, and both parties swipe away from the chat screen, the message will be cleared. Within the Snapchat application itself, a user can opt to save part of the chat by tapping on the message that they want to keep. The user can clear the message by tapping it a second time.

30.     When registering a Snapchat account, the user must select a username that is a unique identifier associated with a specific user on Snapchat and cannot be changed by the user

once selected. A user can also select a vanity name which is not a unique identifier and can be changed by a user or that user's friends to indicate how the user will appear within the Snapchat application.

31.     In general, mobile communications providers like Snapchat will ask each of their subscribers to provide certain personal identifying information when registering for a Snapchat account which may include the subscriber's full name, username, phone number, vanity name, Snapchat account creation date and internet protocol (IP) address, and time stamps and IP address(es) of account logins and logouts.

32.     Snapchat retains logs for Snaps for 30 days. Logs for posted Stories are retained for 24 hours or until deleted by the user. Chat content will be available only if the sender or the recipient chooses to save the Chat, or if the Chat is unopened (within 30 days of sending). Memories may be available until deleted by the user.

## **CONCLUSION**

33.     Based on the aforementioned factual information, there is probable cause to believe, and I do believe, that evidence of the TARGET OFFENSES is located within the SNAP ACCOUNTS, which constitute and contain items that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise criminally possessed, or property that is or has been used as the means of committing the TARGET OFFENSES.

34.     In consideration of the foregoing, I respectfully request that this Court issue a warrant authorizing the search of the SNAP ACCOUNTS, described in Attachment A, for the items more specifically identified in Attachment B.

35.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Snapchat.  Because the warrant will be served on Snapchat, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

SA Tae H. Kim

Digitally signed by SA Tae H. Kim
Date: 2024.01.25 14:57:09 -05'00'

Special Agent Tae H. Kim
Federal Bureau of Investigation

The truth of the foregoing affidavit has been attested to me over the telephone on this ___25th___ day of January, 2024, at Hartford, Connecticut.

Date: 2024.01.25 16:02:07 -05'00'

HONORABLE THOMAS O. FARRISH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## Property to be searched

This Warrant applies to information associated with the following Snap Chat Accounts:

    a.   user name:  **s_blocking2256**, ("SNAP ACCOUNT 1")

    b.   user name: **deezy123455** (SNAP ACCOUNT 2")

(Collectively, the "SNAP ACCOUNTS") that are stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company with offices at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

**ATTACHMENT B**

**Items to be seized**

**I.      Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., (including any messages, images, videos, records, files, logs, or information that have been deleted but are still available to Snap, Inc.) or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.   all records and files, including videos, texts, images, multimedia, chats, messages and instant messages presently contained in the **SNAP ACCOUNTS** or stored on behalf of the user of the **SNAP ACCOUNTS** (including stored or preserved copies, drafts of messages and deleted messages), the source and destination addresses associated with any messages, the date and time at which each message was sent, and the size and length of each message.

b.   the contents of any Snaps, Stories, Chats, Memories sent to and from the **SNAP ACCOUNTS**, including any that have been deleted but are still available to Snap, Inc. and logs or records of the  Snaps, Stories Chats and Memories sent or received by the **SNAP ACCOUNTS**, including sender, recipient, date, and time;

c.   all business records and subscriber information, in any form kept, pertaining to the **SNAP ACCOUNTS** including full name, user name, vanity name, physical address, telephone numbers, email addresses, social security number, date of birth registration details, date account was opened, length of service, the types of

service utilized, device information and device history including  the ESN

(Electronic Serial Number) or other unique identifier for the device(s) associated

with the account, the current App version utilized; Account change history (a log

of changes to the account made by the user including dates/times of changes in

registration email address or phone number and display  name); Purchase History,

Last Active Date, whether Maps and/or two-factor authentication is enabled

d.   all transactional information of all activity of the **SNAP ACCOUNTS**, including

records of session times and durations, IP address used to register the account, IP

addresses associated with session times and dates, account status and log files of

Snaps, Stories, Chats and Memories and any other accounts associated with the

**SNAP ACCOUNTS**

e.   Friends list (including user's friends, friend request sent, users blocked and

deleted).

f.   Search history

**g.**   all records pertaining to communications between Snap, Inc and the user(s)

regarding the **SNAP ACCOUNTS**, including contacts with support services and

records of actions taken;

h.   Location data associated with the **SNAP ACCOUNTS**

Snap, Inc. is hereby ordered to disclose the above information to the government within fourteen

days of issuance of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and

instrumentalities of violations of 18 U.S.C. § 1470, 18 U.S.C. § 2252A(a)(1) and (b)(1), 18

3

U.S.C. § 2252A(a)(2)(A) and (b)(1), 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), and 18 U.S.C.

§2422(b) and 18 U.S.C. § 2251(a) involving the **SNAP ACCOUNTS**, from February 1, 2023, to

present including for information pertaining to the following matters:

    a.   The production, possession, or access to, transportation, receipt and distribution of

        child pornography, the transfer of obscene material to a minor and the enticement

        of a minor to engage in illegal sexual activity and evidence, indicating attempts to

        commit these offenses or planning to commit these offenses, to include

        communications with victims and potential victims;

    b.   The identity of the person(s) who created or used the **SNAP ACCOUNTS**,

        including records that help reveal the whereabouts of such person(s) at the time

        the offenses were committed and currently;

    c.   Evidence of utilization of other email accounts, social media accounts, online chat

        programs, file storage accounts, including any account or user names

    d.   Information indicating how and when the **SNAP ACCOUNTS** were accessed or

        used, to determine the geographic and chronological context of account access,

        use, and events relating to the crimes under investigation and to the account

        user(s).

    e.   All records, documents, invoices, or materials associated with the **SNAP**

        **ACCOUNTS** that concern accounts with an Internet service provider or a

        telephone service provider whose services may have been used in the commission

        of the above-reference code sections and crimes.

    f.   Evidence of utilization of aliases and fictitious names

g.  Any and all files depicting child pornography, as defined in 18 U.S.C. § 2256(8), and child erotica.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review

6